WAYNE COUNTY PROSECUTOR v RECORDER'S COURT JUDGE

Docket No. 77-3189. Submitted March 21, 1978, at Detroit.—Decided September 20, 1978.

Annette Gail Alexander was convicted in Recorder's Court of Detroit, Robert L. Evans, J., of second-degree murder and possession of a firearm during the commission of a felony. The trial court ruled that the felony-firearm conviction merged with the felony and sentenced Miss Alexander to 2-1/2 to 10 years in prison on the murder conviction. The Wayne County Prosecutor filed an original action in the Court of Appeals for superintending control to compel the judge of the Recorder's Court of Detroit to sentence Miss Alexander under the felony-firearm statute. *Held:*

1. Both the Michigan and Federal constitutions have been consistently held to prohibit not only multiple prosecutions for the same offense but also multiple punishments.

2. Where a charged offense contains all of the elements of an alleged included offense, plus one or more additional elements, the lesser offense is a necessarily included offense within the greater since it is legally impossible to commit the greater without also having committed the lesser; where an included offense is necessarily included, it becomes legally the "same offense" as the greater for the purposes of double jeopardy.

3. A cognate lesser offense is an offense which shares several elements of the higher offense and is of the same class or category but may contain some elements not found in the higher offense; whether or not an instruction or conviction of a greater and a cognate offense is constitutionally proper depends on the facts of the case.

4. The underlying felony is always a necessarily lesser in-

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 166.
[2, 4, 7] 21 Am Jur 2d, Criminal Law §§ 185, 189.
  Conviction of lesser offense as bar to prosecution for greater on new trial. 61 ALR2d 1141.
[3] 21 Am Jur 2d, Criminal Law § 189.
[5] 21 Am Jur 2d, Criminal Law § 182.
[6, 7] 21 Am Jur 2d, Criminal Law § 185.

cluded offense of felony-firearm, regardless of whether or not the firearm was used in the commission of the underlying felony.

5. The Federal same offense test for double jeopardy is to determine whether conviction for each offense requires proof of an additional fact which the other does not and, if it does not, precludes multiple convictions; the Federal same offense test would bar a conviction for both felony-firearm and the underlying felony.

6. Legislative intent to permit double punishment for a greater and necessarily lesser included offense cannot override the constitutional prohibition against double jeopardy.

Conviction of murder affirmed; felony-firearm conviction vacated.

CYNAR, J., dissented. He would hold that the Legislature's clear intent to provide for two convictions and a mandatory two-year minimum sentence for persons who commit or attempt to commit a felony, not expressly excluded in the felony-firearm statute, while in possession of a firearm abrogates any constitutional multiple punishment problem.

1. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY CLAUSE —MULTIPLE PROSECUTIONS—MULTIPLE PUNISHMENTS.

Both the Michigan and Federal constitutions have been consistently held to prohibit not only multiple prosecutions for the same offense but also multiple punishments (US Const, Am V, Const 1963, art I, § 15).

2. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—NECESSARILY INCLUDED OFFENSE.

Where a charged offense contains all of the elements of an alleged included offense, plus one or more additional elements, the lesser offense is a necessarily included offense within the greater since it is legally impossible to commit the greater without also having committed the lesser; where an included offense is necessarily included, it becomes legally the "same offense" as the greater for the purposes of double jeopardy.

3. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—COGNATE OFFENSE.

A cognate lesser offense is an offense which shares several elements of the higher offense and is of the same class or category but may contain some elements not found in the higher offense; whether or not an instruction or conviction of a greater and a cognate offense is constitutionally proper depends on the facts of the case (Const 1963, art I, § 15).

4. CRIMINAL LAW—STATUTES—FELONY-FIREARM—MURDER—NECESSARILY INCLUDED OFFENSE.

Murder is a necessarily included offense of felony-firearm where the murder is the underlying felony of the felony-firearm offense, and, in fact, the underlying felony is always a necessarily lesser included offense of felony-firearm, regardless of whether or not the firearm was used in the commission of the underlying felony (MCL 750.227b; MSA 28.424[2]).

5. CRIMINAL LAW—CONSTITUTIONAL LAW—STATUTES—DOUBLE JEOPARDY—SAME OFFENSE TEST—FELONY-FIREARM.

The Federal same offense test for double jeopardy is to determine whether conviction for each offense requires proof of an additional fact which the other does not and, if it does not, precludes multiple convictions; the Federal same offense test would bar a conviction for both felony-firearm and the underlying felony (US Const, Am V, MCL 750.227b; MSA 27.424[2]).

6. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—MULTIPLE PUNISHMENT—LEGISLATIVE INTENT.

Legislative intent to permit double punishment for a greater and necessarily lesser included offense cannot override the constitutional prohibition against double jeopardy (US Const, Am V, Const 1963, art I, § 15).

DISSENT BY CYNAR, J.

7. CRIMINAL LAW—FELONIES—FELONY-FIREARM—LEGISLATIVE INTENT —TWO CONVICTIONS—MULTIPLE PUNISHMENT—STATUTES.

*The Legislature has clearly provided for two convictions and a minimum two-year sentence where a person commits or attempts to commit a felony, not expressly excluded in the felony-firearm statute, while in possession of a firearm; since the legislative intent is clear, there can be no multiple punishment problem, or possibility of the court cumulating punishment where a defendant is convicted of murder and possession of a firearm during the commission of the murder. (MCL 750.227b; MSA 28.424[2]).*

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *William L. Cahalan*, Prosecuting Attorney, *Edward Reilly Wilson*, Principal Attorney, Appeals, and *Timothy A. Baugh-*

*man,* Assistant Prosecuting Attorney, for the people.

*Kenneth M. Mogill,* for Annette Gail Alexander.

. Before: D. C. RILEY, P. J., and T. M. BURNS and CYNAR, JJ.

D.C. RILEY, P.J. The present matter concerns plaintiff's complaint for superintending control, seeking an order requiring a Detroit Recorder's Court Judge to impose the mandatory sentence under Michigan's felony-firearm statute. MCL 750.227b; MSA 28.424(2). The facts of the underlying case will be detailed briefly.

On July 17, 1977, Annette Gail Alexander was convicted at a jury trial of second-degree murder, MCL 750.317; MSA 28.549, and of possession of a firearm during the commission of a felony, contrary to the felony-firearm statute. The evidence adduced at trial showed that Ms. Alexander had shot one Losloran Whitlow to death with a shotgun. The shotgun in question, which was introduced into evidence at the trial, was both the alleged murder weapon and the firearm referred to in the felony-firearm charge. There was no evidence introduced that Ms. Alexander used or possessed any weapon other than the shotgun during the commission of the murder.

The trial judge thereafter sentenced Ms. Alexander to a prison term of 2-1/2 to 10 years on the murder conviction, but ruled that the sentence on the felony-firearm violation merged with that of the murder conviction. While the judge allowed the second conviction to stand, he held that he could not constitutionally impose the statutorily-

mandated consecutive sentence provision of the felony-firearm law.[1]

The prosecution filed the complaint for superintending control in order to enforce the mandatory sentencing provision. This Court granted plaintiff's motion that defendant show cause why such an order should not issue.

As an introduction to our discussion of the significant questions of law in the present case, we must indicate our agreement with the prosecution that the trial judge was not empowered to in effect amend the sentencing provisions of the statute. The language is clear and unambiguous; the sentence is mandatory in length and in application as consecutive to a sentence imposed for the concurrent felony. While we recognize the court's obligation to protect the constitutional rights of all parties to an action, we cannot sanction the method used in the proceedings below.

We must therefore examine the constitutional issue raised on a much broader basis. In its simplest form, the question presented is whether the convictions for both second-degree murder and felony-firearm violated defendant Alexander's con-

---

[1] MCL 750.227b; MSA 28.424(2), reads in its entirety:

"(1) A person who carries or has in his possession a firearm at the time he commits or attempts to commit a felony, except the violation of section 227 or section 227a, is guilty of a felony, and shall be imprisoned for 2 years. Upon a second conviction under this section, the person shall be imprisoned for 5 years. Upon a third or subsequent conviction under this section, the person shall be imprisoned for 10 years.

"(2) The term of imprisonment prescribed by this section shall be in addition to the sentence imposed for the conviction of the felony or the attempt to commit the felony, and shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of the felony or attempt to commit the felony.

"(3) The term of imprisonment imposed under this section shall not be suspended. The person subject to the sentence mandated by this section shall not be eligible for parole or probation during the mandatory term imposed pursuant to subsection (1)."

This section was added by 1976 PA 6, § 1, effective January 1, 1977.

[2] US Const, Am V; Const 1963, art I, § 15.

stitutional right not to be twice placed in jeopardy.[2] Before entering into a specific discussion of the various double jeopardy considerations applicable to this issue, including Michigan law on included offenses and the effect of legislative intent on individual rights, we must first set forth some general provisions of double jeopardy law.

The language of the Michigan[3] and Federal[4] constitutional sections is essentially the same. It has been consistently held that the protection afforded by both clauses applies not only to bar multiple prosecutions for the "same offense" but also to forbid multiple punishment. *North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969), *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976). Thus it can be said that the two clauses are "substantially identical", at least in scope. *People v White,* 390 Mich 245, 252, fn 4; 212 NW2d 222 (1973).

However, in application the Michigan Supreme Court has not hesitated to adopt stricter standards for double jeopardy than those used in the Federal system. In *White, supra,* the Court incorporated into Michigan law the "single transaction" test as delineated in Justice Brennan's concurring opinion in *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970). This test has not as yet been accepted by a majority of the United States Supreme Court. See *Brown v Ohio,* 432 US 161; 97 S Ct 2221; 53 L Ed 2d 187 (1977) (Brennan, J., concurring). In *People v Cooper,* 398 Mich 450; 247 NW2d 866 (1976), the Court held that under the Michigan constitution subsequent state and Federal prosecutions for the same act violate double

---

[3] "No person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art I, § 15.

[4] "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." US Const, Am V.

jeopardy, even though Federal law would not bar the dual trials. See *Bartkus v Illinois,* 359 US 121; 79 S Ct 676; 3 L Ed 2d 684 (1959), *Abbate v United States,* 359 US 187; 79 S Ct 666; 3 L Ed 2d 729 (1959).

Having laid the groundwork for our decision, we now turn to the specific arguments presented in this case. Our primary area of analysis concerns the concept of included offenses.

In *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975), the Supreme Court discussed at length the definitions of included offenses. The *Jones* Court stated:

"The common-law definition of lesser included offenses is that the lesser must be such that it is impossible to commit the greater without first having committed the lesser. 4 Wharton, Criminal Law and Procedure, § 1799. This definition includes only *necessarily* included lesser offenses. This definition, however, is generally conceded to be unduly restrictive, and thus most jurisdictions, including Michigan, have statutes that are broadly construed to permit conviction of 'cognate' or allied offenses of the same nature, under a sufficient charge. These lesser offenses are related and hence 'cognate' in the sense that they share several elements, and are of the same class or category, but may contain some elements not found in the higher offense." (Footnote omitted, emphasis in original.) 395 Mich at 387.

The primary distinction between the two types of included offenses, as outlined in *Jones, supra,* and its companion cases,[5] is whether the alleged included offense, in a given case, is analyzed from a factual or legal approach. For example, if the charged offense contains all of the elements of the alleged included offense, plus one or more additional elements, the lesser offense is necessarily

[5] *People v Henry,* 395 Mich 367; 236 NW2d 489 (1975), *People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975), *People v Carter,* 395 Mich 434; 236 NW2d 500 (1975), *People v Jenkins,* 395 Mich 440; 236 NW2d 503 (1975).

included within the greater on a legal basis. Since it is *legally* impossible to commit the greater without also having committed the lesser, the facts of the particular case are not necessary to the decision. On the other hand, if the included offense is cognate, having some of the elements of the greater but also an additional element not found in the greater, the *factual* setting of the case is determinative of whether an instruction and/or conviction on that offense is proper. See *People v Ora Jones, supra,* at 390.

Our task now is to determine whether either of the charges in the present case is an included offense of the other, and, if so, what type of included offense. Applying the tests set forth above, we conclude that the murder charge was a necessarily included offense of the felony-firearm charge.

From a legal standpoint, there are no elements in the murder charge that are not also included within the felony-firearm charge. It is legally impossible to support a conviction on felony-firearm without first having proven the commission of the underlying felony. Once the felony is shown, the additional element of possession of a firearm during commission of the felony is all that remains for conviction.

An analogy to the felony-murder[6] underlying felony situation is inescapable. In *People v Anderson,* 62 Mich App 475; 233 NW2d 620 (1975), this Court stated:

"For if the jury's first-degree murder conviction was based on a finding that the killing took place during the perpetration of the armed robbery, then the armed robbery constitutes a necessary element of first-degree

---

[6] MCL 750.316; MSA 28.548.

(felony) murder. As a necessary element of first-degree murder, armed robbery would then become an included offense in the greater charge. *People v Simpson,* 5 Mich App 479; 146 NW2d 828 (1966)." 62 Mich App at 482.

See also *People v Wilder,* 82 Mich App 358; 266 NW2d 847 (1978).

What is critically important about this legal-factual distinction of included offenses is its effect on the threshold double jeopardy phrase "same offense". Where an included offense is necessarily included, it becomes legally the "same" offense as the greater for double jeopardy purposes.

"To punish defendant both for the greater offense, that is, first-degree (felony) murder, and for the included offense, which would be in this case armed robbery, would constitute double punishment in violation of the double jeopardy clauses of the United States Constitution and the Michigan Constitution." (Footnote omitted.) *People v Anderson, supra,* at 482.

What this means is that a factual analysis of whether the same physical acts of the defendant violated both statutes is irrelevant to the ultimate disposition. Certainly different physical acts are needed to commit a murder and, as in *Anderson, supra,* an armed robbery. Generally the essential elements of these two offenses do not overlap. It is only when the statutorily-defined crime of felony-murder is involved that the elements of the murder charge expand to include those of the underlying felony.

Likewise, in the felony-firearm situation, it matters not whether the defendant used the firearm to commit the underlying felony, as in the case at bar, or merely possessed a weapon during the commission of a felony. In either situation, regardless of what physical acts can be attributed to the

defendant, the underlying felony is a necessarily included offense of the felony-firearm charge. *People v Ora Jones, supra, People v Anderson, supra.*

In *People v Martin, supra,* the Michigan Supreme Court held that where a defendant is charged with delivery and possession of heroin, and the evidence at trial shows no possession distinct and apart from the possession at the time of delivery, convictions on both offenses would constitute double punishment:

"When the jury found defendant guilty of unlawful delivery of this heroin on the evidence in this record they necessarily found him in possession of it.

" 'It is elementary that the State cannot divide a single offense into several parts according to time and conduct and base separate prosecutions upon and impose separate punishments for the various necessary divisions of that single crime. * * *

" 'The possession of narcotic drugs is an offense distinct from the sale thereof. But in the instant case the possession and sale clearly constituted one single and same act. The possession, as legally defined, is necessarily a constituent part of the sale, as legally defined. Where the only possession of the narcotic drug is that incident to and necessary for the sale thereof, and it does not appear that there was possession before or after and apart from such sale, the State cannot fragment the accused's involvement into separate and distinct acts or transactions to obtain multiple convictions, and separate convictions under such circumstances will not stand. * * * The error is not cured by the fact the trial Court permitted the two sentences to run concurrently. * * * The conviction and sentence upon the charge of possession must be set aside.' *State v Allen,* 292 A2d 167, 172 (Me, 1972)." 398 Mich at 307–308.

The Supreme Court's later decision in *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d

31 (1977), while based upon different statutes,[7] also held that convictions for delivery and possession of heroin, where the evidence shows no possession distinct from the sale, violate double jeopardy.

Applying *Martin, supra,* and *Stewart, supra,* to the instant case does not alter the result. Where felony-firearm and the underlying felony are charged together or in successive prosecutions, it would be factually and legally impossible to view the underlying felony as distinct and apart from the felony-firearm offense. The two charges are by definition concurrent in time.

Under Federal law, the test for when two charged offenses are the "same offense" for double jeopardy purposes was originally set forth in *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932):

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not."

See also *Brown v Ohio, supra, Gore v United States,* 357 US 386; 78 S Ct 1280; 2 L Ed 2d 1405 (1958), Note, *Double Jeopardy: Multiple Prosecutions Arising From The Same Transaction,* 15 Am Crim Law Rev 259 (1978).

Analyzing the *Blockburger* test in the terminology of Michigan law, double jeopardy, for Federal purposes, would bar separate convictions for the

---

[7] In *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976), the offenses charged were under MCL 335.341(1)(a); MSA 18.1070(41)(1)(a) and MCL 335.341(4)(a); MSA 18.1070(41)(4)(a). In *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977), the charged offenses were under the prior controlled substances law. MCL 335.152; MSA 18.1122, MCL 335.153; MSA 18.1123.

greater and a necessarily included offense but not convictions for the greater and a cognate included offense. Where one charge has no elements that are not also part of the greater (a necessarily included offense under *Ora Jones, supra),* the *Blockburger* test says they are the same. Where the included offense has some of the elements of the greater, but also an additional element (a cognate offense in Michigan), *Blockburger* allows separate convictions and sentences.

"This test emphasizes the elements of the two crimes. 'If each requires proof that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes * * * .' *Iannelli v. United States,* 420 U.S. 770, 785 n. 17 [43 L Ed 2d 616, 95 S Ct 1284] (1975)." *Brown v Ohio, supra,* at 166.

As applied to the case at bar, the *Blockburger* test would also result in the conclusion that double jeopardy bars convictions for both felony-firearm and the underlying felony. As stated previously, there are no elements of the felony that are not also required elements for a conviction of felony-firearm.

Again an analogy to the felony-murder-underlying felony situation is appropriate. Under Federal law, as well as Michigan law, convictions on both charges are constitutionally infirm:

"When, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction for the greater one. *In re Hans Nielsen,* 131 US 176 [33 L Ed 118; 9 S Ct 672] (1889); *cf. Brown v. Ohio,*

432 U.S. 161 [53 L Ed 2d 187; 97 S Ct 2221] (1977)."
*Harris v Oklahoma*, 432 US 682, 682–683; 97 S Ct 2912;
53 L Ed 2d 1054 (1977).

Thus, under the case law set out above, Michigan and Federal law would bar convictions for both felony-firearm and the underlying felony.[8] Our most troubling question is whether these general tests for double jeopardy violations apply where the Legislature has expressed its intent that the charges be punished separately.

There can be no argument but that the Legislature has made its intent clear on the face of the statute. The mandatory sentence provision states that the felony-firearm sentence is to run before and consecutive to the sentence imposed on the underlying felony charge. MCL 750.227b(2); MSA 28.424(2)(2). The statute expressly envisions dual convictions and dual sentences. The issue is not the nature of the intent, but whether that intent governs.[9]

It is true that as a general proposition the double jeopardy guarantee is not designed as a restraint on the Legislature's exclusive power of statutory definition:

---

[8] Other states have reached conflicting results in analyzing double jeopardy challenges to their versions of a felony-firearm law. *Compare Whitton v State*, 479 P2d 302 (Ala, 1970), *Roberts v State*, 228 Ga 298; 185 SE2d 385 (1971), *People v Nurse*, 34 Ill App 3d 42; 339 NE2d 328 (1975), and *Cole v State*, 539 SW2d 46 (Tenn Crim App, 1976), with *Jones v Commonwealth*, 235 SE2d 313 (Va, 1977), and *State v Saxon*, 193 Neb 278; 226 NW2d 765 (1975).

[9] In *People v Bennett*, 71 Mich App 246; 247 NW2d 368 (1976), this Court held that the Legislature could constitutionally impose double punishment for a single criminal act if that result was clearly intended on the face of the legislation and from the legislative history. *Bennett* involved convictions for possession and sale of a controlled substance, and as such its double jeopardy arguments were implicitly overruled in *People v Martin, supra,* and *People v Stewart (On Rehearing), supra. See People v Willie Johnson*, 75 Mich App 221, 226 fn 4; 255 NW2d 207 (1977).

"Because it was designed originally to embody the protection of the common-law pleas of former jeopardy, see *United States v Wilson,* 420 U.S. 332, 339–340 [43 L Ed 2d 232, 95 S Ct 1013] (1975), the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." *Brown v Ohio, supra,* at 165.

On the other hand, we read the *Brown* Court's language as much less than total deference to legislative intent, regardless of the clarity of the expression of that intent. The Legislature is free to act as it wishes, but the double jeopardy guarantee still protects the individual defendant from application of laws in violation of the constitutional mandate. For this reason the relief would not be to strike down the statute on its face, but rather to forbid its enforcement on an individual basis.

In the present case we are faced with a situation, unlike that in any of the cited cases, in which the stated legislative intent is to permit double punishment where, under the constitutional standards normally applicable, there would be a double jeopardy violation.[10] Having to resolve this conflict directly, we hold that the legislative intent cannot override the individual's constitutional rights.

The reason for our decision is basic; *i.e.,* the continuing viability of the double jeopardy guarantee. Were we to hold that the Legislature, by the

---

[10] We are not concerned in this case with determining the unit of prosecution, as was the case in *United States v Universal CIT Credit Corp,* 344 US 218; 73 S Ct 227; 97 L Ed 260 (1952), or an amendment to close a previously open loophole in a specific statute, as in *Prince v United States,* 352 US 322; 77 S Ct 403; 1 L Ed 2d 370 (1957).

simple expedient of adding the phrase "this offense is not the same offense as * * * for the purpose of double jeopardy", can create constitutionally-valid situations of multiple prosecutions and/or punishment, we would undermine the very essence of the guarantee. Suppose the Legislature amends the felony-murder statute to provide that the underlying felony is not the "same offense" as the murder? Or suppose that the Legislature creates "crime X", which duplicates the elements of an existing offense but is manifestly intended to be a separate crime? If the express legislative intent controls, we would be forced to uphold the application of these enactments. We cannot agree that the scope of a constitutionally-guaranteed right does, or should, depend on the current objectives of the legislative body.

In making the preceding observations we do not wish to be interpreted as essentially critical of the wisdom of the felony-firearm statute. We appreciate the social and political environment which makes control over the burgeoning number of firearm-related crimes both necessary and commendable. But we also recognize that these same pressures to combat crime can push the proposed cure over the elusive and fragile balance between the rights of society and the rights of the individual that our constitutions exist to preserve:

"Even a single criminal act may lead to multiple prosecutions if it is viewed from the perspectives of different statutes. *E.g., State v. Elder,* 65 Ind. 282 (1879). Given the tendency of modern criminal legislation to divide the phases of a criminal transaction into numerous separate crimes, the opportunities for multiple prosecutions for an essentially unitary criminal episode are frightening." *Ashe v Swenson,* (Brennan J., concurring) *supra,* at 451–452.

Along these lines, and in light of our holding that convictions on both felony-firearm and the underlying felony violate double jeopardy, we acknowledge that the intent of the Legislature to impose consecutive and multiple punishments will be frustrated. We recommend, even though this decision leaves the statute itself untouched,[11] that the Legislature consider revising the statute to provide solely for sentence-enhancement rather than a distinct felony conviction. Although there may be constitutional problems with even a limited provision,[12] the effect of the multiple convictions, and their collateral consequences,[13] will be eliminated.

Our final issue brings us to the ultimate disposition of the case at bar. In a normal situation where we have found a double jeopardy violation because the second conviction is for an included offense, the remedy would be to vacate the second conviction. Application of this general rule to the present case would mean the vacation of the murder conviction, a result that is socially and logically unwarranted. Therefore, mindful that the general rule on vacating the included offense conviction is not without its exceptions, see *People v Martin, supra,* and that we have found two convictions for the "same offense", we choose to vacate

---

[11] We can envision situations in which a prosecutor may wish to proceed on the felony-firearm statute alone. For example, if the underlying felony carries a relatively short maximum sentence or the defendant is a repeat offender under the felony-firearm law, the prosecutor may elect to forego prosecution on the underlying felony in order to utilize the mandatory sentencing provisions of felony-firearm. Of course, the elements of the underlying felony must still be proven as a prerequisite to a felony-firearm conviction.

[12] *See Simpson v United States,* 435 US 6; 98 S Ct 909; 55 L Ed 2d 70 (1978).

[13] Collateral consequences of multiple felony convictions include habitual offender status, increased effect for impeachment purposes at a subsequent trial, and others. *See Sibron v New York,* 392 US 40; 88 S Ct 1889; 20 L Ed 2d 917 (1968).

the conviction for felony-firearm and leave the murder conviction undisturbed.

The conviction for possession of a firearm in the commission of a felony is vacated.

T. M. BURNS, J., concurred.

CYNAR, J. *(dissenting).* I dissent from the majority's opinion for the reasons set forth in Judge BRONSON's opinion in *People v Gary Hughes,* 85 Mich App 674; 272 NW2d 567 (1978). There are no reported cases to date where the double jeopardy clause has been used to frustrate a legislative intent to punish a defendant twice for different aspects of the same act.

There is no reason to extend the protection of the double jeopardy clause in this case. The statute under consideration was enacted to meet a pressing societal problem. This problem might better have been counteracted by enacting a sentence-enhancement scheme similar to that of the habitual offender act, MCL 769.10–769.13; MSA 28.1082–28.1085. However, the failure to draft the felony-firearm statute in that manner does not render it constitutionally infirm. See *Gore v United States,* 357 US 386, 392–393; 78 S Ct 1280; 2 L Ed 2d 1405 (1958).

I would affirm both convictions and would order the trial judge to impose sentence in accordance with the felony-firearm statute.